IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.                                                        CASE NO. 4:01-cr-00069-SPM-AK

TEDDY S. THOMAS,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 73, Amended Motion to Vacate under 28 U.S.C.

§ 2255, by Teddy S. Thomas.  The Government has filed its response, Doc. 78, and Petitioner

has filed a reply.  Doc. 79.  This cause is therefore in a posture for decision.  Having carefully

considered the matter, the Court recommends that the motion be denied as untimely filed.

## BACKGROUND

In December, 2001, Defendant was charged with one count of conspiracy to manufacture,

distribute, and posses with intent to distribute more than 50 grams of methamphetamine and

more than 500 grams of a mixture and substance containing methamphetamine and one count of

possession of firearms in furtherance of a drug trafficking crime.  Doc. 1.

On February 1, 2002, Defendant appeared before the magistrate judge for a change of

plea. Docs. 26 & 29.  Defendant pled guilty to both counts in the Indictment, Docs. 27, 28, & 30,

pleas which were later accepted by the district judge.  Doc. 37.

On July 15, 2002, Defendant appeared for sentencing and was sentenced to 168 months imprisonment on Count 1 and 60 months imprisonment on Count 2, to run concurrently.  Doc. 53. Judgment was entered on July 22, 2002.  Doc. 54.  An amended judgment was entered on July 26, 2002.  Doc. 55.

By motion dated October 7, 2003, Defendant sought an out-of-time appeal on the ground that his attorney had failed to file an appeal "after having agreed to do so with petitioner."  Doc. 65.  Subsequently, the Court denied the motion to the extent that it sought relief pursuant to Fed. R. App. P. 4(b)(4).  Doc. 66.  However, to the extent that Defendant sought relief pursuant 28 U.S.C. § 2255, it referred the matter to the magistrate judge for consideration.  *Id.*

Pursuant to that Order, the magistrate judge directed Defendant to file an amended § 2255 motion if he desired, *see Castro v. United States*, 124 S.Ct. 786, 792 (2003) (before recharacterizing motion as § 2255 motion, court should advise defendant that any subsequent § 2255 motion will be subject to certain restrictions and allow him to withdraw or amend motion), and advised him that the amended motion would relate back to the filing date of Document 65, if "the [amended] motion properly 'relates back'" to the original motion.  Doc. 68.  Defendant was given until March 12, 2004, to file an amended § 2255 motion.  *Id.*

After being given a 30-day extension of time, Doc. 70, Defendant filed the amended motion to vacate on or about March 16, 2004, the date on which the motion was deposited in the prison mail system.  Doc. 73.  The motion was actually filed in this Court on March 22, 2004.  *Id.* As grounds for relief, Defendant claimed "Conspiracy," "Drug Quantity/Amount," "Gun Enhancement at Sentencing," "Civil/Constitutional Rights Violations to Due Process/Equal Protection of law," and "Ineffective assistance of counsel."  *Id.*

The Government then filed its answer in opposition, arguing that Defendant's amended

motion to vacate was untimely.  Doc. 78.

In reply, Defendant contends his motion should be recognized as timely filed

because had his attorney filed the notice of appeal and then the appeal in a timely manner this § 2255 action would have been subsequently filed in a timely manner regardless of how many times the Petitioner would have been transferred from one jail/prison to another.

Doc. 79.  He also argues that he has shown "cause and prejudice" since

if [Defendant] files for an out of time appeal...the rulings in the Eleventh Circuit Court would allow him to proceed on appeal and [he] would be allowed to resubmit briefs filed in the court as a result of this constitutional rights violation of the Sixth Amendment, together with such supplemental briefing as is necessary.

*Id*.  Defendant also claims that he has "used what was in his opinion due diligence to try to handle

his legal matters" in light of the fact that

he is not in understanding of the law and as such he has depended entirely on the representation of learned counsel Eric Haugdahl to handle this legal matter of which [his] family had paid said attorney in full for services paid but never received....When [Defendant] realized that the attorney took his family's money and performed nothing for it he had no idea as to what to do and then he was moved from jail to jail, and he finally found someone, another inmate who [Defendant] thought was knowledgeable of the law to handle filing his paperwork and he had no idea what he was doing.

*Id*.  He then asks the Court, alternatively, to consider a claim under *Blakely.*

## **DISCUSSION**

The alternative issue is easily disposed of.  Following its decision in *Blakely v.*

*Washington*, which involved the constitutionality of state sentencing guidelines, the United States

Supreme Court determined that *Blakely* applies to the Federal Sentencing Guidelines as well.

*United States v. Booker*, ____ U.S. ____, 124 S.Ct. 2519, 159 L.Ed. 2d 442 (2204).  However, the

Eleventh Circuit has determined that *Booker* is not retroactively applicable to cases on collateral

review, as "*Booker*'s constitutional rule falls squarely under the category of new rules of criminal

procedure that do not apply retroactively to § 2255 cases on collateral review." *Varela v. United States*, 400 F.3d 864, 868 (11th Cir. 2005).  Accordingly, any claim regarding the "sentencing enhancements used against" Defendant, Doc. 79, is not cognizable in this proceeding.  The Court thus turns to the question of whether the amended motion to vacate is timely.

Section 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.  "A 1-year period of limitation shall apply to a motion under this section."  *Id.* The one-year limitations period

> shall run from the latest of–
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id*.

In this case, the amended judgment was entered on July 26, 2002.  Doc. 55.  Because no appeal was taken, Defendant's conviction became final ten days after entry of judgment, August

5, 2002.[1]  *See* Fed. R. App. P. 4(b)(1)(A)(I).  The time for filing the instant § 2255 motion began

to run at that time.  As noted *supra*, Defendant's original motion to vacate was filed on October 7,

2003, when Defendant deposited his motion in the prison mail system.  *See Houston v. Lack*, 487

U.S. 266, 275 (1988) (under "mailbox rule," *pro se* prisoner's document is considered filed on

date that prisoner delivers document to prison authorities for mailing).  Clearly, then, Defendant

did not file the motion within one-year of the date his conviction became final, and therefore, the

motion to vacate is untimely under subsection (1).

     The Court therefore turns to whether the petition is timely under subsection (4).  As noted,

under that subsection, the one-year time limit begins to run from "the date on which the facts

supporting the claim or claims presented could have been discovered through the exercise of due

diligence."  According to Defendant, because he was "moved around from jails in Florida to

Alabama, Georgia, Oklahoma, Memphis Tn.," he was not able to find out that his attorney had

withdrawn from his case until he arrived at FCI Yazoo City on March 3, 2003, after getting his

sister to contact counsel.  Doc. 66, Aff.  This was after counsel failed to confer with Defendant

about an appeal following sentencing as he had promised Defendant and after counsel's wife

informed Defendant the week after sentencing that counsel "had left the country for [a] two week

vacation and could not be reached."  *Id.*  As previously noted, the original motion to vacate was

not filed for another seven months after Defendant's arrival at FCI Yazoo City.

     The one-year statute of limitations period under § 2255(4) "begins to run when the facts

---

[1]*See* Fed. R. App. P. 4(a)(3) & (4) (2001).  At the time, intermediate weekends and legal
holidays were included in the ten-day calculation.  The rule was amended in 2002, with an
effective date of December 1, 2002, to bring it in line with the manner in which time is
calculated under the civil and criminal rules, so that now the intermediate weekends and legal
holidays would be excluded from the calculation.  *See* Fed. R. App. P. 4 advisory committee
notes & 26(a).

*could have been* discovered through the exercise of due diligence, not when they were *actually* discovered." *Aron v. United States*, 291 F.3d 708, 711 (11th Cir. 2002). Thus, the "beginning of the one-year period is triggered by a date that is not necessarily related to a petitioner's actual efforts or actual discovery of the relevant facts." *Aron*, 291 F.3d at 711. The timeliness inquiry under subsection (4) begins with "determining whether the petitioner exercised due diligence because...if he did so, the limitation period would not begin to run before the date he actually discovered the facts supporting the claim." *Id*. "It is only if [Defendant] did not exercise due diligence that [the Court is] required to speculate about the date on which the facts could have been discovered with the exercise of due diligence." *Id*. at 711 n.1.

In determining due diligence, subsection (4) does not require "the maximum feasible diligence, but only 'due,' or reasonable, diligence." *Id*. at 712. "Due diligence therefore does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts." *Id*. The due diligence inquiry is "an individualized one that 'must take into account the conditions of confinement and the reality of the prison system.'" *Id*. (citation omitted).

Thus, the initial question in this case is not whether counsel was ineffective for failing to follow Defendant's directions regarding an appeal, but rather, whether instant Defendant made "reasonable efforts" to determine what actions, if any, his attorney had taken towards fulfilling those directions. By Defendant's own admission, he made only one telephone call to his attorney's office the week after sentencing and then made no further efforts to contact his attorney or this Court or the court of appeals, either telephonically, in writing, or through a third party, until March 3, 2003, almost eight months after Defendant appeared for sentencing. Neither Defendant's ignorance of legal matters nor his temporary housing situations constitute sufficient

justification for failing to act with some sort of diligence in determining whether counsel had filed a notice of appeal.  Many inmates suffer from the same impediments as those advanced by Defendant, and yet, they manage to secure assistance within the correctional institution, either from staff or other inmates, to meet deadlines, determine the statuses of their cases, and file court documents in a timely manner.  With one letter or telephone call to the Clerk of this Court or to the presiding district judge, Defendant could have secured a copy of the docket sheet in this case and immediately known that a notice of appeal had not been filed on his behalf.  Defendant's one telephone call between the latter part of July, 2002, and the first of March, 2003, does not even approach due diligence.

Thus, the Court must now determine when Defendant, with the exercise of due diligence, could have discovered that the notice of appeal had not been filed.  The one-year statute of limitations will then run from that date.  In this case, the question is whether, with the exercise of due diligence, Defendant could have discovered this information before October 7, 2002. Between the time that counsel was to return from his vacation, on or about August 5, 2002, and October 7, 2002, sixty-two days passed.  While the Court recognizes that Defendant was being housed in a variety of locations as the Bureau of Prisons transported him to his final place of incarceration, the Court believes that a reasonably diligent prisoner in Defendant's position could have known that an appeal was not being prosecuted on his behalf at some point during that sixty-two day period.  As the Court previously noted, even one telephone call or letter to the Clerk of Court would have resulted in the immediate posting of a docket sheet to Defendant.  While the Court could speculate as to whether Defendant would have timely received the docket sheet given his transportation status and what effect that would have had on the Court's analysis, it need not engage in that exercise since Defendant took no action to determine the status of his appeal

during the relevant two-month period.  In this Court's view and in its experience in handling

prisoner litigation, a diligent prisoner, even one who is ignorant of the law and is being routinely

transferred, could have discovered counsel's failure in sufficient time before October 7, 2002, so

that the instant motion to vacate would have been timely.

This does not, however, end the inquiry as "in the proper case, § 2255's period of

limitations may be equitably tolled."  *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir.

1999).  "Equitable tolling is appropriate when a movant untimely files because of extraordinary

circumstances that are both beyond his control and unavoidable even with diligence."  *Id*.  As the

Court has previously noted, Defendant prisoner status and the realities of incarceration are not

extraordinary circumstances sufficient for the application of equitable tolling.  Furthermore, there

is absolutely no evidence that Defendant acted with any sort of due diligence in pursuing relief ,

and thus, he is not entitled to the benefits of equitable tolling.

## CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's amended

motion to vacate, Doc. 73, be **DENIED** as untimely.

**IN CHAMBERS** at Gainesville, Florida, this **17th**___ day of October, 2006.

**s/ A. KORNBLUM**_____
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**